WALLACE, Judge.
 

 Jose A. Barrientos appeals his judgments and sentences for trafficking in cocaine in an amount greater than 400 grams and less than 150 kilograms, section 893.135(l)(b)(l)(c), Florida Statutes (2005), and possession of more than twenty grams of cannabis, section 893.13(6)(a). Because Mr. Barrientos’ knowledge of the presence of the cocaine was a disputed issue at trial and the trial court deleted the word “knowingly” from the first element of the standard jury instruction for trafficking in cocaine, we reverse the trafficking conviction and remand for a new trial on that charge. However, we affirm the judgment and sentence for possession of cannabis.
 

 I. THE FACTS
 

 There were two defendants in the trial court: the Appellant, Jose A. Barrientos (Jose A.), and his nephew, Jose B. Barrien-tos (Jose B.).
 
 [1]
 
 The charges against the two men arose out of a “buy-bust” operation conducted by Hillsborough County sheriffs deputies. The operation began on February 18, 2006, when Detective John Palomino used a confidential informant to negotiate a purchase of a trafficking amount of cocaine
 
 [2]
 
 with a man at a mobile home in Wimauma. The informant was equipped with an electronic listening device or “wire” that transmitted the informant’s conversations with others to a recording device in an unmarked sheriffs van that was located nearby. Detective Palomino and Corporal Luis Argote were stationed in the van, and they were able to hear the informant’s conversation with the man in the mobile home. The informant and the man in the mobile home conversed in Spanish, and Corporal Argote translated the conversation into English for Detective Palomino.
 

 According to Corporal Argote, the man in the mobile home told the informant that it would take about a week to obtain four and one-half kilograms of cocaine. The man quoted prices and arranged a date for the delivery of the product. At trial, Corporal Argote testified over defense objection that he recognized the voice of the man in the mobile home as the voice of Jose A. Corporal Argote explained that he remembered Jose A.’s “deep, raspy voice” from a single encounter with Jose A. that had occurred approximately four years earlier.
 

 The informant was scheduled to take delivery of the cocaine at the mobile home in Wimauma on February 27, 2006. In preparation for this conclusion to the buy-bust operation, Detective Palomino applied for and obtained an anticipatory search warrant for the mobile home. Detective Palomino and other deputies assisting him
 
 *1212
 
 were to converge on the mobile home and execute the warrant when the informant signaled that he had seen the cocaine inside the mobile home by opening the trunk of his vehicle. When the last stage of the buy-bust operation began, Detective Palomino and several deputies sat in the van a short distance from the mobile home. Other deputies were stationed nearby to watch the mobile home’s perimeter.
 

 Detective Palomino observed the informant approach the mobile home. Once again, the informant was wearing a wire. When the informant walked up to the mobile home, Jose A. was standing outside. Jose A. entered the mobile home a short time after the informant. While the informant and Jose A. were inside the mobile home, Jose B. left the mobile home, retrieved a large package that had been placed beneath the mobile home, and walked back inside. Next, both Jose A. and the informant left the mobile home. While Jose A. stood outside and Jose B. remained inside, the informant — ostensibly to get the cash payment for the cocaine— walked to his car and opened the trunk.
 

 At this prearranged signal, the deputies came out of hiding and converged on the mobile home. Jose A. — who was already outside — -ran in one direction; Jose B. fled through the mobile home’s back door and ran in another direction. The deputies eventually apprehended both men and returned them to the mobile home. Detective Palomino testified at trial that after Jose A. had been informed of his
 
 Miranda
 

 [3]
 

 rights, Jose A. “just advised us that that was his mobile home but after that, nothing.”
 

 Another deputy, who also spoke Spanish, had monitored the electronic transmission from the informant’s wire and testified that she heard what she recognized as a drug transaction between the informant and two individuals. This deputy testified that she heard the voice of “the older gentleman” — whom she subsequently identified as Jose A. — ask the informant how much money he had brought.
 

 However, questions relating to exactly what had transpired inside the mobile home once the informant arrived were not resolved at trial. The informant did not testify. The deputy who monitored the transmission from the informant’s wire testified that the voice of one of the men inside the mobile home was garbled. In addition, neither Jose A. nor Jose B. elected to testify at trial.
 

 When the deputies executed the search warrant, they did not find anyone else in the mobile home. They did find several square packages wrapped in black plastic on the kitchen table. They also found a similar package in an inoperable vehicle that was parked near the mobile home. The packages contained cocaine, and their total weight was 13.7 pounds, or about 6.2 kilograms. One of the deputies also found two plastic bags containing cannabis in a cabinet above the washer and dryer. The cannabis weighed 27.4 grams, or slightly less than one ounce. The deputies seized several other items from the mobile home, including a triple beam scale and a digital scale. Detective Palomino testified that triple beam scales are frequently used to weigh narcotics.
 

 In his closing argument to the jury, Jose A.’s attorney attacked the credibility of Corporal Argote’s voice identification of Jose A. as the man in the mobile home who had set up the narcotics transaction with the informant several days before the buy-bust. Counsel argued that it was implausible that Corporal Argote could remember the sound of Jose A.’s voice from
 
 *1213
 
 a single encounter four years earlier. Jose A.’s attorney also highlighted the State’s failure to call the informant to testify at trial. The main theme of defense counsel’s argument was that the State had failed to prove anything other than that Jose A. was present at the scene of a crime. Counsel argued that the State had failed to establish that Jose A. occupied the mobile home. Jose A.’s attorney emphasized that it was Jose B. who had picked up the large package outside and brought it into the mobile home after the informant had arrived.
 
 [4]
 
 Indeed, no one had seen Jose A. in actual possession of any illegal drugs. Although Detective Palomino and another deputy testified that both defendants were inside the mobile home with the informant for at least a brief period, counsel also argued that Jose A. remained outside the mobile home while Jose B. was inside with the informant. Based on these arguments, Jose A.’s attorney submitted to the jury that the State had failed to carry its burden of proving that Jose A. had been in actual or constructive possession of any illegal substance.
 

 The jury returned verdicts finding both Jose A. and Jose B. guilty of trafficking in cocaine. The jury also found Jose A. guilty of possession of cannabis, but it acquitted Jose B. of that offense. The trial court sentenced Jose A. to twenty years in prison for trafficking and five years in prison for possession of cannabis. The sentences were designated to run concurrently, but the trafficking sentence was subject to a fifteen-year mandatory minimum provision. This appeal followed.
 

 II.THE ISSUES ON APPEAL
 

 On appeal, Jose A. raises one evidentia-ry issue and several claims of fundamental error in the jury instructions. We will briefly consider the evidentiary issue and then examine Jose A.’s claims concerning the jury instructions.
 

 III.THE VOICE IDENTIFICATION ISSUE
 

 Initially, Jose A. argues that the trial court erred in overruling his objection to Corporal Argote’s voice identification testimony of Jose A. as the person who conducted the initial negotiations with the informant to set up the narcotics transaction. This argument is without merit. Corporal Argote’s testimony was admissible to prove the identity of the person that he heard speaking with the informant by means of the wire.
 
 See England v. Slate,
 
 940 So.2d 389, 401 (Fla.2006);
 
 Cason v. State,
 
 211 So.2d 604, 604 (Fla. 2d DCA 1968). The credibility of this evidence was a question for the jury.
 
 See Worley v. State,
 
 263 So.2d 613, 613 (Fla. 4th DCA 1972).
 

 IV.THE JURY INSTRUCTION ISSUES
 

 A. The Written Instructions
 

 At the joint trial held in February 2007, the prosecutor prepared proposed jury instructions and submitted them for the trial court’s consideration. The trial court made several changes to the proposed instructions.
 

 The standard jury instruction then in effect for trafficking in cocaine provided, in pertinent part, as follows:
 

 To prove the crime of Trafficking in Cocaine, the State must prove the fol
 
 *1214
 
 lowing four elements beyond a reasonable doubt:
 

 1. (Defendant)
 
 knowingly
 

 [sold]
 

 [purchased]
 

 [manufactured]
 

 [delivered]
 

 [brought into Florida]
 

 [possessed]
 

 a certain substance.
 

 2. The substance was [cocaine] [a mixture containing cocaine],
 

 3. The quantity of the substance involved was 28 grams or more.
 

 4. (Defendant) knew that the substance was [cocaine] [a mixture containing cocaine].
 

 Fla. Std. Jury Instr. (Crim.) 25.10 (emphasis added).
 

 The prosecutor made two changes to the portion of the standard instruction quoted above. First, he deleted the word “knowingly” from the first element of the State’s proof. Second, he deleted the fourth element entirely. The prosecutor explained to the trial court and defense counsel that he had deleted the fourth element pertaining to the defendant’s knowledge of the illicit nature of the substance in accordance with section 893.101.
 
 [5]
 
 However, the deletion of the word “knowingly” from the first element of the State’s proof passed without comment on the record by anyone.
 

 Also, the standard jury instruction for “drug abuse-possession” applicable to the possession of cannabis charge provided, in pertinent part, as follows:
 

 To prove the crime of (crime charged), the State must prove the following three elements beyond a reasonable doubt:
 

 1. (Defendant) possessed a certain substance.
 

 2. The substance was (specific substance alleged).
 

 3. (Defendant) had knowledge of the presence of the substance.
 

 Fla. Std. Jury Instr. (Crim.) 25.7. Here, the prosecutor deleted the third element concerning the defendant’s knowledge of the presence of the substance and substituted the following: “The amount of Cannabis was over 20 grams.” The prosecutor also omitted the third element from the instructions for the applicable lesser included offenses of possession of cocaine and misdemeanor possession of cannabis. Once again, these alterations in the standard instructions passed without any rec
 
 *1215
 
 ord comment. On appeal, Jose A. has not offered any argument concerning this alteration in the standard instructions on possession.
 

 B. The Trial Court’s Changes to the Proposed Instructions
 

 The prosecutor apparently prepared one set of instructions outlining the elements of the charged offenses for each defendant. The prosecutor also prepared separate instructions for the lesser included offenses of possession of cocaine and misdemeanor possession of cannabis for each defendant. However, during the charge conference, the trial court announced that it would make two significant changes to the instructions submitted. First, instead of using separate instructions defining the offenses for each defendant, the trial court told counsel that it would place both defendants’ names on a single set of instructions. Second, the trial court said that instead of reading the instructions for the lesser included offenses, it would consolidate those instructions with the instructions for the charged offenses. After announcing its intentions, the trial court asked, “Does anybody care one way or another about that?” Jose A.’s trial counsel responded, “No.” Neither the prosecutor nor Jose B.’s attorney made any response on the record.
 

 As delivered to the jury, the instructions on the first element of each of the charged offenses read as follows: “First, that Jose A. Barrientos
 
 and/or
 
 Jose B. Barrientos possessed a certain substance.” (Emphasis supplied.) The trial court did not read the instructions that defined the lesser included offenses. Instead, the trial court told the jury that the lesser included offenses differed from the charged offenses only with respect to the quantity of the substances involved. The trial court referenced the respective weights of the quantities of cocaine and cannabis necessary to prove the charged offenses. None of the attorneys made any objections to the instructions as read.
 

 After completing the charge to the jury, the trial court apparently provided the jury with a complete set of the written instructions to take to the jury room. The packet with the written instructions included the instructions for the lesser included offenses. The lesser included offenses were also appropriately listed on the verdict form. However, the written instructions only included one set of instructions defining the elements of the offenses for both defendants. In the written set of instructions, the trial court used the definitions of the offenses that had been prepared relative to Jose B. and added the words “Jose A. Barrientos and/or” by in-terlineation.
 

 C. The Requirements Necessary to Demonstrate Fundamental Error
 

 Jose A. did not object at trial to the claimed defects in the jury instructions that he now argues on appeal. Therefore, before considering his arguments about the jury instructions, we must consider the requirements for establishing the existence of fundamental error relative to jury instructions.
 

 Jose A. had the right to have the trial court “ ‘correctly and intelligently instruct the jury on the essential and material elements of the crime[s] charged and required to be proven by competent evidence.’ ”
 
 State v. Delva,
 
 575 So.2d 643, 644 (Fla.1991) (quoting
 
 Gerds v. State,
 
 64 So.2d 915, 916 (Fla.1953)). However, jury instructions are subject to the contemporaneous objection rule, and absent an appropriate trial objection, an error pertaining to the jury instructions can be raised on appeal only if fundamental error occurred.
 
 *1216
 

 See id.
 
 (citing
 
 Castor v. State,
 
 365 So.2d 701 (Fla.1978)).
 

 In the context of jury instructions, “ ‘fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.’ ”
 
 Id.
 
 at 645 (quoting
 
 Stewart v. State,
 
 420 So.2d 862, 863 (Fla.1982)). It follows that a failure to instruct the jury on an element of a crime is fundamental only when that particular element is disputed at trial.
 
 Reed v. State,
 
 837 So.2d 366, 369 (Fla.2002). Where an element of the crime is not accurately defined but is undisputed at trial, “the error is not fundamental error.”
 
 Id.
 
 Furthermore, for an error in jury instructions to reach the level of fundamental error, “ ‘the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ”
 
 Delva,
 
 575 So.2d at 644-45 (quoting
 
 Brown v. State,
 
 124 So.2d 481, 484 (Fla.1960)). With these principles in mind, we turn now to a consideration of Jose A.’s claims of fundamental error in the jury instructions.
 

 D. Jose A.
 
 ⅛
 
 Claims of Fundamental Error in the Instructions
 

 Jose A. argues that the jury instructions were fundamentally flawed in four respects. First, Jose A. argues that the trial court erred in omitting the element of knowledge of the nature of the illicit substance, i.e., the fourth element, from the trafficking instruction. Second, Jose A. contends that the trial court erred by omitting the element of “knowing” possession, i.e., part of the first element, from the instruction on trafficking. Third, Jose A. submits that the trial court erred when it consolidated the instructions on the lesser included offenses with the instructions on the charged offenses of trafficking in more than 400 grams of cocaine and the possession of more than twenty grams of marijuana. Fourth, Jose A. asserts that the trial court erred when it used the expression “and/or” between his name and Jose B.’s name while instructing the jury on both the trafficking charge and the possession charge. We will address each of these contentions separately.
 

 1. Knowledge of the Illicit Nature of the Substance
 

 Jose A. argues that the trial court committed fundamental error in failing to read the fourth element of the standard jury instruction on trafficking in cocaine, to-wit: “(Defendant) knew the substance was [cocaine] [a mixture containing cocaine].” Fla. Std. Jury Instr. (Crim.) 25.10. Unfortunately, for offenses occurring after section 893.101 became effective, the standard jury instruction is inaccurate in this respect. Section 893.101(2) provides, in pertinent part, that “knowledge of the illicit nature of a controlled substance is not an element of any offense under [chapter 893].” Thus the statute eliminated what had been the fourth element of the State’s proof of a trafficking offense, i.e., that the defendant knew that the substance was cocaine or a mixture containing cocaine.
 
 See Nedd v. State,
 
 965 So.2d 1287, 1288 n. 3 (Fla. 2d DCA 2007);
 
 Snell v. State,
 
 939 So.2d 1175, 1179 n. 1 (Fla. 4th DCA 2006).
 

 Section 893.101 became effective May 13, 2002.
 
 See Whitehurst v. State,
 
 852 So.2d 902, 903 (Fla. 2d DCA 2003). Because the date of Jose A.’s alleged offense was February 27, 2006, section 893.101 is applicable to his case. For this reason, the State was not required to prove Jose A.’s knowledge of the nature of the substance to establish a prima facie case on the trafficking charge. It follows that the trial court did not err in failing to instruct the jury that the State was required to
 
 *1217
 
 prove Jose A.’s knowledge of the nature of the substance.
 

 Under section 893.101, “[l]ack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of [chapter 893].” § 893.101(2). The statute provides further that when a defendant asserts such an affirmative defense, “the possession of a controlled substance, whether actual or constructive, shall give rise to a permissive presumption that the possessor knew of the illicit nature of the substance.” § 893.101(3). Jose A. did not raise as an affirmative defense any claim that he lacked knowledge of the nature of the substance found in the black plastic packages, i.e., the subject of the trafficking charge. Thus he was not entitled to an instruction directing the jury to consider this issue as an affirmative defense.
 

 2. The Element of “Knowing” Possession
 

 Jose A. also contends that the trial court committed fundamental error by omitting the word “knowingly” from the first element of the standard jury instruction for trafficking in cocaine. In considering this argument, we look to the elements of the crime as set forth in the statute:
 

 Any person who
 
 knowingly
 
 sells, purchases, manufactures, delivers, or brings into this state, or who is
 
 knowingly
 
 in actual or constructive possession of, 28 grams or more of cocaine, as described in s. 893.03(2)(a)4., or of any mixture containing cocaine, but less than 150 kilograms of cocaine or any such mixture, commits a felony of the first degree, which felony shall be known as “trafficking in cocaine,”....
 

 § 893.135(l)(b)(l) (emphasis added). Thus the statute that defines the crime of trafficking in cocaine specifically makes the knowing possession of cocaine an element of that crime.
 
 See Nash v. State,
 
 951 So.2d 1003, 1005 (Fla. 4th DCA 2007).
 

 Prior to the decision in
 
 State v. Dominguez,
 
 509 So.2d 917 (Fla.1987), the standard jury instruction for trafficking in cocaine required the State to prove that the defendant
 
 “knowingly
 
 sold, delivered or possessed a certain substance.”
 
 Id.
 
 at 918 (emphasis added);
 
 see Delva,
 
 575 So.2d at 644. In
 
 Dominguez,
 
 however, the supreme court determined that the case before it revealed an “inadequacy” in the standard jury instruction for drug trafficking offenses. 509 So.2d at 918. To correct this inadequacy, the court added a fourth element to the standard jury instructions for drug trafficking, i.e., that “(Defendant) knew the substance was (specific substance alleged).”
 
 Id.; Delva,
 
 575 So.2d at 644. The 2002 legislature effectively abrogated
 
 Dominguez’s
 
 requirement that the State prove the defendant’s knowledge of the nature of the substance constituting the subject of the trafficking offense. However, section 893.101 addresses only the fourth element of the instruction concerning knowledge of the
 
 illicit nature
 
 of the substance, not the first element requiring that the defendant must
 
 knowingly
 
 sell, purchase, manufacture, deliver, bring into this state, or possess the substance.
 
 See Nash,
 
 951 So.2d at 1005. Since Jose A.’s knowing possession of the substance was a required element of the State’s proof, the trial court should have instructed the jury on that element in accordance with the standard instruction.
 
 See id.
 
 at 1005-06.
 

 In response, the State argues that the issue of Jose A.’s knowing possession of the cocaine was not a disputed issue at trial. We disagree. Jose A.’s trial strategy was to suggest that the only person involved in the drug sale to the informant was Jose B. It was Jose B. who had left the mobile home to retrieve the large bag that may have contained the cocaine and brought it inside after the informant ar
 
 *1218
 
 rived. Jose A.’s attorney argued to the jury that his client — who had remained outside the mobile home during a portion of the informant’s visit — was merely present at the scene and was not involved in the trafficking offense. The evidence of Jose A.’s noninvolvement may have been slight, but it was sufficient to raise an issue concerning whether he had knowingly possessed the cocaine. For this reason, it was fundamental error for the trial court to omit the instruction on the element of knowing possession.
 
 See Duckett v. State,
 
 985 So.2d 674, 675 (Fla. 4th DCA 2008);
 
 Nash,
 
 951 So.2d at 1005-06. Furthermore, as the Fourth District did in
 
 Nash,
 
 we reject the State’s additional argument that reading other parts of the trafficking instruction was sufficient to avoid fundamental error.
 
 See Nash,
 
 951 So.2d at 1005.
 

 3. Consolidating the Instructions on the Lesser Included Offenses
 

 Next, we consider Jose A.’s argument that the trial court committed fundamental error when it consolidated the instructions on the lesser included offenses with the charged offenses. Jose A. argues that the trial court effectively failed to instruct the jury on the lesser included offenses. We agree that the method employed by the trial court to instruct the jury on these offenses was irregular. However, Jose A. does not explain why the trial court’s handling of the instructions constituted fundamental error.
 

 We note that even a complete failure to instruct the jury on the applicable lesser included offenses in this case would not have constituted fundamental error.
 
 See McKinney v. State,
 
 579 So.2d 80, 83-84 (Fla.1991);
 
 Crawford v. State,
 
 606 So.2d 1204, 1205 (Fla. 2d DCA 1992);
 
 Thompson v. State,
 
 969 So.2d 1223, 1224 (Fla. 1st DCA 2007). It follows that the delivery of a truncated version of the instructions on the lesser included offenses likewise could not constitute fundamental error.
 

 That said, we disapprove the trial court’s approach to the instructions on the lesser included offenses in this case. The trial court was required to orally deliver its charge to the jury. Fla. R.Crim. P. 3.390(b).
 
 [6]
 

 See generally Haynes v. State,
 
 946 So.2d 1106, 1107 (Fla. 5th DCA 2006) (noting the importance of the trial judge’s duty to instruct the jury orally). The trial court does not adequately discharge its important duty to instruct the jury on the law in a felony prosecution by delivering an off-the-cuff summary of the instructions on the applicable lesser included offenses and by telling the jurors that they can read the full instructions later in the jury room if they are so inclined. Such a practice inevitably tends to minimize the importance of the instructions on the lesser included offenses. If a trial judge does not orally read the instructions on the applicable lesser included offenses, the jurors may easily draw the conclusion that the judge does not believe the lesser included offenses are worthy of the jurors’ serious consideration. Thus, absent the express consent of the State and the defense, the trial court should always read the instructions on the applicable lesser included offenses in their entirety.
 

 4. The Use of the Expression “And/ Or”
 

 Finally, we examine Jose A.’s argument that the trial court committed fundamental
 
 *1219
 
 error when it used “and/or” between his and Jose B.’s names in the jury instructions regarding the elements of the charged offenses. Because we have decided that the omission of the word “knowingly” from the cocaine trafficking instruction is fundamental error and requires a new trial, we decline to consider Jose A.’s argument about the use of “and/or” in the trafficking instruction. However, we will address this argument as it pertains to the instruction on possession of cannabis.
 

 This court has previously opined that the use of “and/or” between the names of codefendants might lead a jury to conclude that one codefendant could be convicted solely upon a finding that the other codefendant’s conduct satisfied the elements of the offense.
 
 See Zeno v. State,
 
 910 So.2d 394 (Fla. 2d DCA 2005);
 
 Cabrera v. State,
 
 890 So.2d 506 (Fla. 2d DCA 2005). Because of this, we held that the use of “and/or” between codefendants’ names in jury instructions defining the elements of the offenses charged was fundamental error.
 
 Zeno,
 
 910 So.2d at 396;
 
 Cabrera,
 
 890 So.2d at 508. The First District reached the same conclusion in
 
 Davis v. State,
 
 922 So.2d 279 (Fla. 1st DCA 2006).
 

 The Supreme Court of Florida rejected this view in
 
 Garzon v. State,
 
 980 So.2d 1038 (Fla.2008). Instead, the supreme court endorsed the Fourth District’s approach,
 
 [7]
 
 which emphasized an examination of the totality of the record to determine whether the “and/or” instruction did, indeed, result in fundamental error.
 
 Id.
 
 at 1043. In other words, assuming that the use of the “and/or” instruction was error (which the supreme court suggests it almost certainly is,
 
 id.
 
 at 1045), the appellate court must examine the overall context— for example, other jury instructions given by the court, arguments presented by the attorneys, and the evidence in the case— before it can determine whether the error “ ‘reach[ed] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ”
 
 Id.
 
 at 1041 (quoting
 
 Delva,
 
 575 So.2d at 645).
 

 Although the supreme court did not emphasize any particular list of factors to examine, we note that there are some similarities here to the facts examined in
 
 Gar-zón
 
 which precluded a finding of fundamental error in that case. For example, as in
 
 Garzón,
 
 the evidence in this case strongly linked Jose A. to the crime charged.
 
 See id.
 
 at 1043. Also, in this case, the trial court’s multiple defendants instruction clearly advised the jury that the charges against each defendant and the applicable evidence must be considered separately as to each defendant. This instruction was bolstered by Jose A.’s counsel’s explanation to the jury during closing argument that it was required to consider the State’s proof separately as to each defendant.
 
 [8]
 
 The jury clearly took this instruction to heart, for it found Jose A. guilty of possession of cannabis but acquitted Jose B. of that offense. This outcome strongly suggests that the jury was not
 
 *1220
 
 misled by the use of “and/or” with regard to the charge of possession of cannabis.
 
 See id.
 
 at 1044-45. Finally, the jury received individual verdict forms for each defendant. As in
 
 Garzón,
 
 this emphasized to the jury that each defendant was to receive individualized consideration.
 
 See id,,
 
 at 1044.
 

 Based on the totality of the record in this case, we conclude that the use of “and/or” between the names of Jose A. and Jose B. in the jury instruction defining the elements of cannabis possession was not fundamental error. Having said this, we note, as did the supreme court in
 
 Garzón,
 
 980 So.2d at 1045, that the use of the “and/or” instruction was error, although it did not rise to the level of fundamental error. We also reiterate the supreme court’s condemnation of the use of that expression in jury instructions and urge trial courts within the Second District to avoid its use.
 

 V. CONCLUSION
 

 We reverse Jose A.’s judgment and sentence for trafficking in cocaine and remand for a new trial on that charge. We affirm Jose A.’s judgment and sentence for possession of cannabis. Since Jose A. is entitled to a new trial on the trafficking charge, we offer some guidelines for the preparation and delivery of the jury instructions on retrial.
 

 First, the trial court must include the word “knowingly” in the first element of the standard jury instruction for trafficking in cocaine. Second, the trial court should consider whether it should also include the third element of the standard jury instruction on the lesser included offense of possession of cocaine. Section 893.101 addresses the issue of the defendant’s knowledge of the
 
 illicit nature
 
 of a controlled substance, not the separate issue of the defendant’s knowledge of its
 
 presence. See De La Cruz,
 
 884 So.2d at 351 n. 1. Third, absent an express agreement to the contrary from all parties, the trial court shall read the instruction on the lesser included offense of possession of cocaine in its entirety. Finally, we note that the use of the expression “and/or” between codefendants’ names in jury instructions that define the elements of criminal offenses continues to be condemned as error.
 
 See Garzon,
 
 980 So.2d at 1045. Accordingly, on remand, if Jose A. is tried jointly with Jose B., the trial court shall avoid the use of the expression “and/or” in the jury instructions. The trial court may wish to use
 
 Garzón’s
 
 alternative formulation that avoids the problems associated with the use of “and/or.”
 
 See id.
 

 Affirmed in part, reversed in part, and remanded with directions.
 

 KELLY and LaROSE, JJ., Concur.
 

 [1]
 

 . Today we are issuing an opinion in Jose B.’s appeal from his conviction for trafficking in cocaine. The case number assigned to Jose B.’s appeal is 2D07-1301.
 

 [2]
 

 . Under the statute then in effect, twenty-eight grams or more of cocaine, or any mixture containing cocaine, constituted a trafficking amount. § 893.135(l)(b)(l).
 

 [3]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).
 

 [4]
 

 . One might reasonably draw an inference that the black packages containing cocaine were in the large plastic bag that had been stored under the mobile home. However, there was no evidence presented at the trial that the black packages were actually in the large plastic bag.
 

 [5]
 

 . In section 893.101, the Florida Legislature specifically directed that "knowledge of the
 
 illicit nature
 
 of a controlled substance” is not an element of any offense under [chapter
 
 893
 
 — the "Florida Comprehensive Drug Abuse Prevention and Control Act].” § 893.101(2) (emphasis added). As we will discuss more fully below, knowledge of the illicit nature of a controlled substance is distinct from knowledge of its presence.
 
 See De La Cruz v. State,
 
 884 So.2d 349, 351 n. 1 (Fla. 2d DCA 2004).
 

 Thus, in an apparent further attempt to comply with section 893.101, the prosecutor in this case deleted the reference to the defendant’s "knowledge of the illicit nature of the thing” from the constructive possession section of all of the instructions concerning both of the charged offenses and the lesser included offenses. Jose A.’s trial counsel objected to this alteration of the standard instruction. The trial court did not expressly rule on this objection, but it also did not restore the deleted material to the proposed instructions. On appeal, Jose A. has not argued that the omission of the reference to the defendant's "knowledge of the illicit nature of the thing” from the constructive possession section of the instructions was error. The most recent amendment to the standard jury instructions on drug abuse offenses also deletes the reference to the defendant's "knowledge of the illicit nature of the thing” from the constructive possession section of the instructions.
 
 See In re Standard Jury Instructions in Criminal Cases (No. 2005-3),
 
 969 So.2d 245, 246 (Fla.2007).
 

 [6]
 

 . The version of Florida Rule of Criminal Procedure 3.390(b) that was in effect when Jose A.’s case was tried provided that "[e]very charge to a jury shall be orally delivered.” Rule 3.390(b) was amended effective January 1, 2008.
 
 See In re Amendments to the Florida Rules of Civil Procedure,
 
 967 So.2d 178, 184, 187 (Fla.2007). However, the amendment to the rule retained the requirement that the jury instructions be orally delivered.
 

 [7]
 

 .
 
 Garzon v. State,
 
 939 So.2d 278 (Fla. 4th DCA 2006).
 

 [8]
 

 . We do not suggest that any significant weight should be given to the attorney's explanations of the law in closing argument. The trial court always cautions the jury that it is the court that will instruct it on the law applicable to the case, Fla. Std. Jury Instr. (Crim.) 2.1, and that the jury’s verdict must be based on the evidence and the law contained in the instructions, Fla. Std. Jury Instr. (Crim.) 3.10(8). Nevertheless, the emphasis on this instruction by counsel is an additional factor to be considered in determining whether the "and/or” instruction might have misled the jury.